Filed 3/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ALBERTO HURTADO,<br><br>    Defendant and Appellant. | 2d Crim. No. B319381<br>(Super. Ct. No. 2015020888)<br>(Ventura County) |

Here is something novel – a criminal case that need not undergo a hearing pursuant to Penal Code[1] section 1170.95 (now section 1172.6).[2]  Why?  Because the defendant was the only person who committed the crime of attempted murder for which a jury found him guilty beyond a reasonable doubt.

We affirm the trial court on the doctrine of harmless error even though there is no error.

---

[1] All statutory references are to the Penal Code.

[2] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There was no change in content.  We hereafter cite to section 1172.6 for ease of reference.

Jose Alberto Hurtado appeals an order denying his petition for resentencing under section 1172.6. In 2017, we affirmed his conviction for attempted murder (§§ 664, 187, subd. (a) (count 1)); assault with a semiautomatic firearm (§ 245, subd. (b) (counts 2 and 3)); and attempted shooting at an occupied vehicle (§§ 664, 246 (count 4)). (*People v. Hurtado* (Aug. 30, 2017, B271115) [nonpub. opn.].)[3] The jury found Hurtado personally used a firearm. (§§ 12022.53, subd. (b) (count 1), 12022.5, subd. (a) (counts 2 and 3).) The trial court sentenced Hurtado to an aggregate prison term of 23 years 8 months.

In February 2022, Hurtado filed a petition for resentencing under section 1172.6. The trial court denied his petition without appointing counsel or holding a hearing. We affirm.

FACTS

On March 16, 2015, Felipe Sandoval was driving his car. His passengers were Jose Medina Gamez (Gamez) and Francisco Sandoval (Francisco). Sandoval saw a white Impala automobile following them. Hurtado was in the passenger seat of that car. The white Impala moved to the side of Sandoval's vehicle. Sandoval made a right turn onto another street. He "got scared" "seeing" Hurtado, whom he had known for three years. (*People v. Hurtado, supra*, B271115.)

Sandoval drove to an intersection and stopped. The white Impala "got there and blocked [his] way." (*People v. Hurtado, supra*, B271115.) Sandoval testified that Hurtado "pulled out" a "firearm," pointed it at him, and "tried firing at [him]." (*Ibid.*) The gun "didn't fire." (*Ibid.*) Hurtado pulled the trigger several times because the gun would not fire. He "racked the gun" by

_____

[3] We grant Hurtado's request to take judicial notice filed September 8, 2022.

2

moving the top portion of the gun slide "back and forth" two or three times. (*Ibid.*) He pulled the trigger several times after he racked the gun, but the gun was jammed. Not surprisingly, Sandoval believed Hurtado was trying to kill him. Sandoval put the car "in reverse" and drove away. (*Ibid.*)

Gamez testified Hurtado "tried killing [them]" with a "nine-millimeter" gun. (*People v. Hurtado*, *supra*, B271115.) Hurtado pointed the gun "at [them]" and was "racking the slide" of the gun because it "jammed." (*Ibid.*) Francisco testified that a white Impala "cut [them] off." (*Ibid.*) Hurtado pointed a black gun at them; the gun "jammed." (*Ibid.*) He appeared "to be angry." (*Ibid.*) Francisco was "scared for [his] life." (*Ibid.*) Police Detective James Crilly testified that a semiautomatic handgun has "a magazine that you load the ammunition into and you put it into the grip frame or the pistol grip. You have to cycle the slide to get a round into the chamber so it can be fired." (*Ibid.*) If there is a malfunction, one could rack the slide to fix the problem or "to get another round into the chamber." (*Ibid.*) A video surveillance camera from a liquor store at the date and time of the incident showed a car passing by matching the description of the white Impala. Police found a white Impala at Hurtado's residence.

Police Detective Edgar Fernandez testified that Hurtado's brother, Luis, was a suspect in a "December 2014 serious and violent crime." (*People v. Hurtado*, *supra*, B271115.) Sandoval witnessed the crime and had spoken with Fernandez "on several occasions." (*Ibid.*) Police Officer Jaime Miranda testified that Sandoval was a friend of the victim in that case and that victim had died. Sandoval provided the police with information concerning the crime.

In 2022, Hurtado filed a petition for resentencing under section 1172.6. The trial court denied that petition without appointing counsel or holding a hearing. It found: 1) Hurtado's petition is "meritless as a matter of law"; 2) the petition is refuted by the facts in the record; 3) Hurtado was not convicted under the natural and probable consequences doctrine; 4) Hurtado is "ineligible for relief" under section 1172.6; and 5) Hurtado acted alone. The court also observed that "the jury found [Hurtado] personally used a firearm in connection with the attempted murder conviction."

## DISCUSSION

*Noncompliance with the Statutory Resentencing Procedure*

Section 1172.6 became law when the Governor signed Senate Bill No. 1437 (2017-2018 Reg. Sess.) in 2018. "Senate Bill [No.] 1437 'amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the *actual* killer, did not act with the intent to kill, or was not a *major participant* in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, italics added.)

The statute allows defendants convicted of murder to file a resentencing petition by alleging they could not currently be convicted of murder because of the changes in the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at p. 417.) If the petitioner made a prima facie showing for relief, the trial court was required to issue an order to show cause for an evidentiary hearing. (§ 1172.6, subd. (c).)

In 2021, the Legislature passed Senate Bill No. 775 (2021 Reg. Sess.) amending section 1172.6. (Stats. 2021, ch. 551, § 2.)

4

It allowed defendants convicted of attempted murder to file resentencing petitions. (§ 1172.6, subd. (a).) It requires "[t]he trial court on receiving a petition must appoint counsel to represent the petitioner if the petitioner has requested counsel. (§ [1172.6], subd. (b)(3).) After the parties are given an opportunity to submit briefs, it 'shall hold a hearing to determine whether the petitioner has made a prima facie case for relief' and if the petitioner has done so, it must issue an order to show cause. (§ [1172.6], subd. (c).)" (*People v. Basler* (2022) 80 Cal.App.5th 45, 55.)

Here the trial court did not appoint counsel for Hurtado, set a briefing schedule, or hold a hearing before deciding Hurtado did not make a prima facie showing for resentencing. It did not comply with the statutory requirements.

*Violation of Hurtado's Constitutional Rights*

Hurtado contends by not following the statutory procedure the trial court violated his constitutional rights.

In some contexts, a court's failure to comply with a statutory procedure will constitute a denial of due process. (*People v. Slutts* (1968) 259 Cal.App.2d 886, 894.)

But a trial court's statutory omissions at the first step of the section 1172.6 process are not state or federal constitutional violations. (*People v. Lewis* (2021) 11 Cal.5th 952, 973.) "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*Id.* at p. 972.) "[A] petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section [1172.6] petitioning process." (*Id.* at p. 973.) "At that point, the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so." (*Ibid.*)

"Thus, the trial court's failure to appoint counsel to represent Lewis was state law error only." (*Ibid.*) "Typically, when an 'error is purely one of state law, the *Watson* harmless error test applies.'" (*Ibid.*)

*Senate Bill No. 775 and the Lewis Harmless Error Rule*

*People v. Lewis, supra*, 11 Cal.5th 952, was decided before the enactment of Senate Bill No. 775. Senate Bill No. 775 created a uniform procedure to be applied to all petitions for resentencing. When the Legislature creates a mandatory procedure for courts to follow, noncompliance may require reversal of judgments rendered without compliance with that procedure. (*In re J.W.* (2020) 53 Cal.App.5th 347, 356-357; *In re Jasmine G., supra*, 127 Cal.App.4th at p. 1115; *People v. Slutts, supra*, 259 Cal.App.2d at p. 894.)

But in enacting Senate Bill No. 775, the Legislature knew that *Lewis* applied a harmless error standard in appropriate cases. The Legislature did not intend to replace the *Lewis* harmless error rule with an automatic reversal. Senate Bill No. 775 contains significant references to *Lewis*. Legislators stated the bill "[a]ddresses what evidence a court may consider at a resentencing hearing (*clarifying the discussion* in *People v. Lewis, supra*, [11 Cal.5th] at pp. 970-972)." (Stats. 2021, ch. 551, § 1, subd. (d), italics added.) They indicated that Senate Bill No. 775 "*[c]odifies the holdings* of *People v. Lewis*" involving the right to counsel and "the standard for determining the existence of a prima facie case." (Stats. 2021, ch. 551, § 1, subd. (b), italics added.)

Senate Bill No. 775 reaffirmed *Lewis* with modifications, preserving *Lewis*'s recognition of the trial court's authority to promptly screen out petitions by categorically ineligible

6

defendants. The Legislature intended the *Lewis* harmless error standard to continue following the enactment of Senate Bill No. 775.

### *Harmless Error*

The trial court found Hurtado's petition was not credible after reviewing the record of conviction. " '[I]f the record . . . "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid*.)

The record supports the trial court's decision to deny the petition because Hurtado was not eligible for relief. He alone attempted to commit murder. As *the* attempted murderer, he is "ineligible for relief" as "a matter of law," and "there is no reasonable probability [Hurtado] would have obtained a more favorable result if counsel had been appointed and given the opportunity to file a memorandum supporting the petition"; consequently, the trial court's errors were "harmless." (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 864.)

But here harmless error is a misnomer. The trial court committed no error. But in cases like this one, the harmless error doctrine provides a reasonable method to avoid protracted hearings in past cases that are final and should stay that way. This also frees overburdened courts to decide current cases. We hope the Legislature solves this anomaly.

DISPOSITION

The order is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


GILBERT, P. J.

We concur:


YEGAN, J.


BALTODANO, J.


8

Patricia M. Murphy, Judge

Superior Court County of Ventura

_____

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.